**Electronically Filed
Intermediate Court of Appeals
CAAP-19-0000023
24-FEB-2020
07:47 AM**

NO. CAAP-19-0000023

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I


DL, Plaintiff-Appellant, v.
CL, Defendant-Appellee


APPEAL FROM THE FAMILY COURT OF THE FIRST CIRCUIT
(FC-D NO. 16-1-1014)

MEMORANDUM OPINION
(By: Fujise, Presiding Judge, Leonard and Wadsworth, JJ.)

Plaintiff-Appellant DL (**Husband**) appeals from the December 6, 2018 Order re:  [Husband]'s Motion to Determine & Modify Child Support (**Order re Child Support**), entered by the Family Court of the First Circuit (**Family Court**).[1]

I.   RELEVANT BACKGROUND

A.   The Underlying Divorce Action

On August 3, 2016, Husband filed a Complaint for Divorce against Defendant-Appellee CL (**Wife**).  Following a trial, which spanned from July 31, 2017, to January 8, 2018, the Family Court entered its:  (1) March 16, 2018 First Amended Order Re: Evidentiary Hearing (**Amended Order**); (2) First Amended Findings of Fact, Conclusions of Law and Order Regarding: June 21, 2017 Order Re: [Wife]'s Motion for Pre-Decree Relief; March 13, 2016

---

[1]   The Honorable Gale L.F. Ching presided.

[sic] Order Re: Evidentiary Hearing; and March 16, 2018 First Amended Order Re: Evidentiary Hearing; and (3) an April 26, 2018 Divorce Decree (**Divorce Decree**).

Among the orders entered, the Family Court: (1) awarded sole physical custody of the parties' minor children (**Children**) to Wife and permitted Wife to relocate with the Children to Arizona, no earlier than July 1, 2018, in order to complete their academic school year in Hawai'i.[2] With respect to child support, the Family Court imputed income to Husband in the amount of $10,471 per month, based on Wife's evidence at trial of the median salary of an attorney in Honolulu, and utilized Wife's actual gross monthly income at $5,709.60 to order Husband to pay Wife child support in the amount of $2,873 per month, commencing on February 1, 2018.

On March 26, 2018, Husband filed a notice of appeal, initiating CAAP-18-0000211. Husband challenged the Family Court's granting of sole physical custody of the Children to Wife and relocation of the Children with Wife to Arizona, as well as the Family Court's refusal to disqualify Wife's counsel during

---

[2] Additionally, pursuant to a May 3, 2018 Order Re: [Husband]'s Motion to Adjust Summer 2018 Time-Sharing, the Family Court ordered, in relevant part, that:

2. [Husband] shall transport the minor children [CL] and [LL] to [Wife] by June 1, 2018 and be allowed to return to Hawaii with the Minor Children by June 10, 2018. Upon completion of the Punahou Summer School session, [CL] shall be returned to [Wife] by July 21, 2018,

3. [Husband] shall transport minor child [LL] to [Wife] by July 1, 2018[.]

trial due to an alleged conflict of interest pertaining to a paralegal employed by his firm.

Husband also filed a May 7, 2018 Motion for Reconsideration and/or Amendment of Orders Pursuant to [Hawaii Family Court Rules (**HFCR**)] Rule 59(e) (**Motion to Reconsider**), asking the Family Court to reconsider its rulings regarding custody and relocation in the Divorce Decree, citing "[s]ignificant and material new evidence regarding the best interests of the [Children]," to wit: that Wife relocated from Hawai'i to Arizona eight days after trial and left the Children exclusively in Husband's care "for an indefinite period of time." Husband also sought to modify the child support order so that the date of the first child support payment would correspond with the date that the Children relocated to Arizona and actually resided with Wife. In her opposition to the Motion to Reconsider, Wife did not dispute having relocated to Arizona or leaving the Children in Husband's care but explained to the Family Court her reasons for doing so, which included, *inter alia*, accepting a job offer from a company in Arizona that would not extend her offer of employment any longer.

In a June 7, 2018 Order Re: [Husband's Motion to Reconsider] (**Order re Reconsideration**), the Family Court denied Husband's request to reconsider its prior order regarding child custody and relocation but granted the order regarding the commencement date of child support to correspond with the actual date that the Children were to begin to reside with Wife in Arizona. Husband filed another notice of appeal on July 5, 2018,

3

challenging, *inter alia,* the Order re Reconsideration, as well as the Family Court's previous determination to impute income to Husband for purposes of calculating child support, which initiated CAAP-18-0000536.

On October 23, 2018, Husband filed a Motion to Determine & Modify Child Support. First, Husband sought to modify his child support payment, effective August 1, 2018, to reflect Wife's salary increase as of July 15, 2018. Husband also sought to impute income to Wife of an additional $1,000 per month, due to allegedly undisclosed additional income from contract work during 2018. Additionally, Husband argued that the Family Court should depart from the Hawai'i Child Support Guidelines (**Guidelines**) in entering its modification, because the Children resided in a different state with a substantially lower cost of living. Husband also argued that Wife should be ordered to pay child support to Husband for the period of January 2018 through June 2018, during which the Children remained in Husband's sole custody in Hawai'i, prior to their relocation to Arizona in July 2018. Finally, Husband sought attorney's fees incurred in connection with bringing the Motion to Determine & Modify Child Support.

In her November 19, 2018 response, Wife did not oppose the modification and does not appear to have specifically opposed a deviation from the Guidelines based on the disparate cost of living in Arizona. However, Wife opposed imputing any income to her beyond her actual salary for 2018. She also opposed Husband's request for child support for the period of January to

4

June 2018, citing that she was ultimately awarded sole physical custody of the Children and that her income of $69,000 during that period was largely spent on traveling to Honolulu to visit the Children "every other weekend," which constituted "exceptional circumstances" warranting denial of Husband's request. Wife opposed Husband's request for attorney' fees, arguing that he could have resolved the issues without court intervention *via* the Child Support Enforcement Agency (**CSEA**) but chose to bring a motion instead. Finally, Wife noted that, as of the filing of her response, Husband had made no payments toward his $36,291 in child support and alimony amounts due.

During a December 5, 2018 hearing on the motion, the Family Court first sought to determine the parties' incomes "for the Court to then do the analysis" with respect to modifying the amount of Husband's current support obligation. Husband argued that he should no longer be imputed $10,471 per month and that "something in the range of 5 to $6,000" would be reasonable. Husband also reiterated his argument that Wife's income should be imputed at an additional $1,000 per month for 2018. Wife again opposed imputing any additional income to her and argued that her base salary of $138,000 should be used from the date it became effective. Wife also opposed the reduced amount of imputed income to Husband on the basis that he is "an almost 14-year attorney" but stated:

> I use the Arizona guidelines. I'm fine with that. And I plugged in the numbers at [Husband]'s imputed income. And that returned a result of him paying $1,718.08 per month.
>
> And then he also wanted to use like the 61 percent of it basically to like adjust for the lower cost of living in

Arizona, and that was just under -- that was $1,244.35.   And
I attached those to my motion.   I think those are fair
figures.

Additionally, Wife disclosed current child care costs
of $862 for both children and a health insurance cost of $270 for
both children to begin in January 2019.

The Family Court stated:

> So if we used [Wife's] salary at 138 and [Husband]'s
> imputed between 5 and 6, we can come up with some type of
> number, and then the Court can then consider the equities in
> the situation. . . . [T]he Court does understand that the
> Hawaii numbers may be different.  And given Arizona -- the
> cost of living is a lot lower than Hawaii.  The Court may
> then come up with some number for the child support.

After hearing argument regarding  Husband's request for
child support for the period of January 2018 through June 2018,
the Family Court stated:

> THE COURT:  Okay.  I've just been handed the child
> support guidelines that were run.  The Parent A gross is
> $11,500.  That's the -- that's what I guess [Wife]'s gross
> monthly would be.
>
> THE CLERK:  Yes.  Mother.  Parent A.
>
> THE COURT:  And Parent B is [Husband] based on 6,000.
> And then you inserted the child care and medical care.
>
> THE CLERK:  Yes.
>
> THE COURT:  Credits.  So the child support comes out
> to $1,506 or 753 per child.
>     . . . .
>
> [HUSBAND]:  Minor quibble that the health insurance
> should be 270 instead of 274, but that's -- yeah.  That's
> insignificant.[3]

---

[3]     The court minutes indicate, in part:

Mother pays out $862/month in child care.
Mother also pays out $274/month in health care coverage.
    . . . .

(continued...)

Husband then argued that the $11,500 figure for Wife's income should be adjusted to reflect the value where the Children are living. Specifically, Husband cited the cost of living ratio from one of Wife's trial exhibits to arrive at a monthly salary of $18,578 for Wife. In response, Wife argued that "some equity has to come in here too," because her actual income was nearly twice the amount to be imputed to Husband and the $1,506 figure "is right in the middle of where we came up with."

With respect to Husband's request for child support from January 2018 through June 2018, Husband again suggested using the inflated $18,578 figure for Wife's income and argued that, together with his $6,000 imputed income, the court should order Wife to pay $3,912 per month to him for January 2018 to June 2018, to reflect the time that the Children were with him exclusively in Hawai'i. Finally, the parties reiterated their positions as to Husband's request for attorney's fees.

After taking the matter under advisement, on December 6, 2018, the Family Court entered the Order re Child Support, which granted in part and denied in part Husband's Motion to Determine & Modify Child Support and which contained the following orders:

---

[3](...continued)
Court had legal aid representative, Susan Takenaka prepare the child support guidelines worksheet for the court using the following numbers:
Parent A: $11,500/month
Parent B: $600 [sic]
The child support guidelines worksheet produced child support of $1506/month for $753/month per child.

1.      [Husband]'s request for an order modifying child
        support is GRANTED and [the court] further orders
        [Husband]'s monthly child support obligation is
        $753.00 per child totaling $1,506.00 per month
        commencing August 1, 2018;

2.      [Husband]'s request for an order awarding child
        support in the amount of $3,912.00 per month for the
        period of January 1, 2018 through June 30, 2018 is
        DENIED; and

3.      [Husband]'s request for an order awarding attorney
        fees is DENIED.

The court did not include any written findings in its Order re Child Support and did not attach a copy of any worksheets used to calculate the modified amount ordered. Husband timely filed his notice of appeal on January 7, 2019. A copy of the notice of appeal was filed with the Family Court on February 14, 2019. On February 20, 2019, the Family Court entered an Order to Submit Proposed Findings of Fact [(**FOFs**)] and Conclusions of Law [(**COLs**)], pursuant to HFCR Rule 52.[4] The Family Court does not appear to have subsequently entered any written findings with respect to its Order re Child Support.

---

[4]     HFCR Rule 52 provides, in pertinent part:

**Rule 52. FINDINGS BY THE COURT.**

        **(a) Effect.** In all actions tried in the family court, the court may find the facts and state its conclusions of law thereon or may announce or write and file its decision and direct the entry of the appropriate judgment; except upon notice of appeal filed with the court, the court shall enter its findings of fact and conclusions of law where none have been entered, unless the written decision of the court contains findings of fact and conclusions of law. To aid the court, the court may order the parties or either of them to submit proposed findings of fact and conclusions of law, where the written decision of the court does not contain the findings of fact and conclusions of law, within 10 days after the filing of the notice of appeal, unless such time is extended by the court. Requests for findings are not necessary for purposes of review. . . .

B.    Appellate Dispositions

1.    CAAP-18-0000211

As noted above, Husband filed an appeal on March 26, 2018, contending that the Family Court erred in awarding sole physical custody of the Children to Wife and permitting the relocation of the Children to Arizona, as well as refusing to disqualify Wife's counsel during trial due to an alleged conflict of interest pertaining to a paralegal employed by his firm. DL v. CL, CAAP-18-0000211, 2019 WL 968052, *1 (Haw. App. Feb. 28, 2019) (SDO) (**DL I**).

On appeal, the Intermediate Court of Appeals (**ICA**) rejected Husband's arguments, affirming the Divorce Decree with respect to the Family Court's custody and relocation determination, and rejecting Husband's argument regarding the Family Court's refusal to disqualify Wife's counsel. Id. at *1-*7. The ICA concluded, inter alia, that substantial evidence supported the Family Court's best interest determination with respect to custody and relocation and that the Family Court did not abuse its discretion in denying Husband's motion to disqualify Wife's counsel. Id. at *3-*5, *7.

On March 15, 2019, the ICA denied reconsideration of its disposition. DL v. CL, CAAP-18-0000211, 2019 WL 1224561 (Haw. App. Mar. 15, 2019) (Order). On August 6, 2019, the Hawai'i Supreme Court accepted Husband's application for writ of certiorari of DL I. DL v. CL, SCWC-18-0000211, 2019 WL 3628716 (Haw. Aug. 6, 2019) (Order).

9

2.   CAAP-18-0000536

In this appeal, Husband challenged the Family Court's: (1) denial of his request for reconsideration of the court's child custody and relocation decisions in light of Wife's relocation to Arizona immediately following trial; (2) property distribution; and (3) order for Husband to pay temporary child support while the Children were in Arizona from July 2016 through May 2017, including the amount to be paid during that time as well as the amount of child support Husband was ordered to pay after custody changed post-trial.  DL v. CL, CAAP-18-0000536, 2019 WL 4934660, *1 (Haw. App. Oct. 7, 2019) (SDO) (**DL II**).[5]

The ICA determined that the Family Court:   (1) did not abuse its discretion in denying Husband's Motion to Reconsider with respect to custody and relocation; (2) abused its discretion in deviating from the partnership model based on its cited findings; and (3) did not abuse its discretion in imputing an income of $10,471 per month to Husband and in using the Guidelines worksheet to calculate that Husband should pay child support in the amount of $2,873.  Id. at *3, *8, *9.   The ICA subsequently denied reconsideration.  No application for a writ of certiorari appears to have been filed.

3.   CAAP-18-0000630

On August 15, 2018, Husband filed a notice of appeal in CAAP-18-0000630, challenging various orders by the Family Court and contending that the Family Court:   (1) erred in denying

_____

[5]      On February 10, 2020, the Hawai'i Supreme Court accepted Husband's application for writ of certiorari of DL II.  DL v. CL, SCWC-18-0000536, 2020 WL 620744 (Haw. Feb. 10, 2020) (Order).

10

Husband's motion to amend various FOFs and COLs and/or to enter new findings and conclusions and an amended Divorce Decree; (2) abused its discretion in denying Husband's Motion for a New Trial with respect to custody; and (3) abused its discretion in denying Husband's HFCR Rule 60(a) Motion to Correct Clerical Errors.

In a Memorandum Opinion filed on December 26, 2019, the ICA concluded that (1) the order denying Husband's motion to amend FOFs and COLs and/or to enter new findings and conclusions and an amended Divorce Decree and (2) the order denying Husband's Motion for a New Trial with respect to custody are void, and the court remanded to the Family Court to enter further orders denying the motions on that basis. DL v. CL, CAAP-18-0000630, 2019 WL 7198733, *1 (Haw. App. Dec. 26, 2019) (mem. op.). The order denying Husband's HFCR Rule 60(a) Motion to Correct Clerical Errors was affirmed. Id. Judgment on appeal was entered on January 24, 2020.[6]

II. POINTS OF ERROR

Husband asserts four points of error on appeal, contending that the Family Court erred by: (1) denying Husband's request for an award of child support from Wife for the period of time during which Husband exclusively cared for the Children, pending their subsequent relocation to Arizona; (2) requiring

---

[6] In addition to the above, on September 11, 2018, Husband filed a notice of appeal in CAAP-18-0000704, challenging various orders by the Family Court and contending that the Family Court erred in considering Wife's request for child support and spousal support for the period of June 2017 through December 2017 and in calculating and awarding the amount of support during that period. Husband also contended that the Family Court erred in awarding attorney's fees and costs to Wife in connection with her motion seeking support during that period. This appeal remains pending at the time of this Memorandum Opinion. Another appeal, CAAP-18-0000877, was dismissed upon a stipulation of the parties.

Husband to pay child support according to the Guidelines and failing to consider Husband's request to find exceptional circumstances based on the lower cost of living in the Children's state of residence; (3) failing to impute appropriate income to Wife, ignoring undisputed facts, and using incorrect amounts to calculate child support; and (4) denying Husband's request for an award of attorney's fees for bringing the Motion to Determine & Modify Child Support.

III. APPLICABLE STANDARDS OF REVIEW

> Since no rules or guidelines have been published advising the family court how to decide a certain child support issue, the relevant appellate standard of review is the abuse of discretion standard. An abuse of discretion occurs if the trial court has clearly exceeded the bounds of reason or disregarded rules or principles of law or practice to the substantial detriment of a party litigant.

Doe v. Doe, 118 Hawai'i 268, 278, 188 P.3d 782, 792 (App. 2008) (citation omitted).

A family court's determination as to whether there are exceptional circumstances permitting a departure from the Guidelines is reviewed under the right/wrong standard. Child Support Enf't Agency v. Mazzone, 88 Hawai'i 456, 464, 967 P.2d 653, 661 (App. 1998) (citation omitted). The court's determinations as to whether and to what extent a parent should be allowed to pay less than the Guidelines indicate, because of the existence of exceptional circumstances, are reviewed under the abuse of discretion standard. Id.

"The trial court's grant or denial of attorney's fees and costs is reviewed under the abuse of discretion standard." Sierra Club v. Dep't of Transp., 120 Hawai'i 181, 197, 202 P.3d 1226, 1242 (2009) (citation and brackets omitted).

IV.   DISCUSSION

    A.   Husband's Request for Support

        Husband contends that the Family Court erred in denying

his request for child support during the period that he

"exclusively cared" for the Children, pending the Family Court's

final decisions on custody and the Children's subsequent

relocation to Arizona in July 2018.[7]  Husband argues that the

Family Court had no discretion to find that Wife was not

obligated to pay any child support "even if the amount of the

support or the time for which it applied was disputed."

        Pursuant to HRS § 571-52.5 (2018), "[w]hen the court

establishes or modifies the amount of child support required to

be paid by a parent, the court shall use the guidelines

established under section 576D-7, except when exceptional

circumstances warrant departure."  The Guidelines contain

substantive rules and principles relating to the calculation of

monthly child support amounts.  P.O. v. J.S., 139 Hawai'i 434,

441-42, 393 P.3d 986, 993-94 (2017); Haw. State Judiciary, Hawaii

Child Support Guidelines 2014, https://www.courts.state.hi.us/

docs/form/oahu/child_support/child_support_guidelines.pdf (last

visited January 30, 2020).[8]  The supreme court has held that

"failure of the family court to apply the Guidelines render[s]

the child support award in essence unreviewable, as there is no

_____

        [7]    Pursuant to the Family Court's Order Re Reconsideration, the
commencement date of Husband's child support payments was modified to
correspond with the actual date that the Children were to begin to reside with
Wife in Arizona.

        [8]    Citations to the Guidelines are to the pdf page number.

meaningful way to evaluate how the amount was determined or whether it was correctly calculated." P.O., 139 Hawai'i at 443, 393 P.3d at 995.

The Guidelines include various appendices. Appendix A includes the "Child Support Guidelines Worksheet" (**CSGW**), which is used to determine the initial calculation of each parent's monthly support obligation. Guidelines at 29. According to the Guidelines, "the non-custodial parent" pays his or her monthly support obligation to the other parent, *i.e.*, the "custodial parent." Id. at 8. The Guidelines contain the following definitions with respect to custody:

> V.   TERMS AND DEFINITIONS
>  .  .  .  .
>
> > H.   CUSTODY (for calculating child support):
> >
> > > 1.   **EQUAL TIME-SHARING** means that each parent has the children approximately 183 overnights per year. When there is equal timesharing for child support purposes, child support is determined by Line 21 of the EXTENSIVE TIME-SHARING WORKSHEET.
> > >
> > > 2.   **EXTENSIVE TIME-SHARING** means that a parent has the children more than 143 overnights, but less than 183 overnights, per year. When there is extensive time-sharing for child support purposes, child support is determined by Line 29 of the EXTENSIVE TIME-SHARING WORKSHEET.
> > >
> > > 3.   **JOINT PHYSICAL CUSTODY** is statutorily defined in Hawai'i as: "physical custody . . . shared by the parents . . . in such a way as to assure the child or children of frequent, continuing, and meaningful contact with both parents . . . ." *Under the Guidelines, child support is based on the number of overnights per year and not on the label given to the time-sharing arrangement* (see § V.H.1 and 2 above).
> > >
> > > 4.   **PHYSICAL CUSTODY** to one parent *(sometimes referred to as the "custodial parent") for child support purposes is based on the number of overnights that the children spend with a parent.*

5.      **SOLE PHYSICAL CUSTODY** to one parent, for child support purposes, means that the other parent has 143 or fewer overnights per year.

6.      **SPLIT CUSTODY** means that one parent has sole physical custody of one or more of the children and the other parent has sole physical custody of the remaining child or children.  When there is split custody for child support purposes, child support is determined by Line 35 of the EXTENSIVE TIME-SHARING WORKSHEET.

Id. at 22-23 (emphasis added) (footnotes omitted).  Thus, per the Guidelines and upon application of the above definitions, the non-custodial parent must pay to the other parent the child support obligation calculated using the CSGW, unless the number of overnights that the children spend with the parent "per year" triggers one of the three categories that requires use of the extensive time-sharing worksheet (**ETSW**) provided in the appendices.  Id. at 8, 35.  The ETSW gives credit to a parent for the number of overnights exceeding regular support, and the payor of child support is the parent with fewer overnights.  Id. at 42.

Here, Husband asserted that, notwithstanding the eventual custody determination in favor of Wife, he "exclusively care[d]" for the Children for a certain number of overnights between January 2018 and July 2018.  While Wife cites that she traveled to Honolulu to visit the Children "every other weekend" during that time, she does not appear to dispute that Father cared for the Children during the majority of the time during those months.  Pursuant to the Guidelines, the payor of child support and each parent's child support obligation is determined by the number of overnights the Children spend with each parent per year.  Id. at 23.  Thus, depending on the actual number of

overnights the Children spent with the parties during 2018, the parties' child support obligations may have been affected under the Guidelines.

However, by summarily denying Husband's request for any support in its Order re Child Support and declining to enter any findings with respect to the number of overnights the Children spend with each parent, the Family Court apparently failed to use the Guidelines or relevant worksheets to determine the effect of the *actual* caretaking arrangement on either Husband or Wife's monthly child support obligation for any part of 2018. Accordingly, the Family Court erred.[9]  See P.O., 139 Hawai'i at 443, 393 P.3d at 995 ("[T]he family court erred when it determined Father's monthly support obligation without using the Guidelines as required by statute.").

Wife argues that she should not have to pay child support during the relevant period because she was eventually awarded sole physical custody of the Children.  However, the Guidelines expressly state that child support is based on the number of overnights per year and "not on the label given to the time-sharing arrangement."  Guidelines at 23 (emphasis added). Thus, the Family Court's description of the custody arrangement is not controlling for purposes of calculating child support.

---

[9]  This conclusion is not inconsistent with DL II, where Husband asserted, *inter alia*, that the Family Court erred in determining the amount of child support to be paid by Husband after custody changed post-trial, and this court affirmed.  2019 WL 4934660 at *1.  There, the Family Court's support determination made as part of the Divorce Decree appears to have been predicated on the assumption that Wife would have "sole physical custody" for child support purposes as defined in the Guidelines.

Wife further argues that exceptional circumstances support the Family Court's denial of support to Husband, citing her annual income during the early part of 2018 of approximately $69,000, her use of nearly all of that income to travel to Honolulu for frequent visits with the Children, as well as testimony from Husband and Husband's family "that they were happy to support the Children if they remained in Honolulu." However, as the supreme court has explained:

> [T]he family court [is] first required to utilize the Guidelines Worksheet and compute a support amount. Only after determining the support amount using the Guidelines Worksheet may the court consider whether exceptional circumstances permit deviation from that amount. If the court concludes that such circumstances exist, it must then make findings of fact with respect to both the support amount determined by the Guidelines Worksheet and the exceptional circumstance(s) that would justify deviation from this amount.

P.O., 139 Hawai'i at 444, 393 P.3d at 996. Thus, even if exceptional circumstances warranted a deviation from the Guidelines, the Family Court erred in failing to enter findings, first with respect to the amount determined, and then with respect to the facts supporting a determination of exceptional circumstances. Id. Accordingly, the case must be remanded for further proceedings to determine the parties' monthly child support obligations during all relevant periods of 2018.

B.     Exceptional Circumstances

Husband argues that the difference in cost of living between Hawai'i and the Children's present state of residence (Arizona) constitutes an exceptional circumstance warranting a deviation from the Guidelines.

Pursuant to HRS § 571-521.5 and the Guidelines, the existence of exceptional circumstances may allow for deviation from the support amount calculated using the CSGW. P.O., 139 Hawai'i at 443, 393 P.3d at 995. The question of whether certain circumstances constitute "exceptional circumstances" is a question of law. Ching v. Ching, 7 Haw. App. 221, 224, 751 P.2d 93, 96 (1988). The supreme court has recognized that "exceptional circumstances" encompass a "broad variety of factual scenarios" and that the Guidelines "grant broad discretion to the family court to find the existence of 'other exceptional circumstances' beyond those enumerated in the Guidelines." P.O., 139 Hawai'i at 443, 393 P.3d at 995 (citing the Guidelines, which identify as examples of exceptional circumstances the extraordinary needs of the child or other parent, other payments made on behalf of the child or other parent, and a parent's inability to earn income).

However, "[b]efore considering whether exceptional circumstances warrant deviation . . . we must first ensure that the Family Court utilized the CSGW to compute the support." RC v. MC, CAAP-15-0000592, 2019 WL 338344, *5 (Haw. App. Jan. 28, 2019) (amended mem. op.) (citing P.O., 139 Hawai'i at 444, 393 P.3d at 996). The amount calculated pursuant to the Guidelines is "presumptively the amount that should be ordered." Mazzone, 88 Hawai'i at 462, 967 P.2d at 659 (citation omitted). "Only after determining the support amount using the [CSGW] may the court consider whether exceptional circumstances permit deviation from that amount." P.O., 139 Hawai'i at 444, 393 P.3d at 996.

18

Here, the Family Court appears to have properly begun with the Guidelines before determining whether a deviation from the calculated amount was warranted. Specifically, the hearing transcript indicates that the Family Court had been provided a calculated support amount of $1,506.00 based on the "child support guidelines that were run," and the court minutes indicate that a child support guidelines worksheet was prepared. Cf. id. at 441-44, 393 P.3d at 993-96 (determining that the family court erred where there was "no indication that the family court utilized the Guidelines in determining Father's monthly support obligation"). However, in order for the amount calculated pursuant to the Guidelines to be the presumptive amount for an award, the calculation must have been properly performed using accurate data. Here, the Family Court erred in failing to consider Husband's potential credit for nights exceeding regular support for 2018, based on his additional time with the Children from January 2018 to June 2018, which is problematic for its calculation of Husband's modified child support obligation. Additionally, the Family Court appears to have utilized erroneous data to perform its Guidelines calculations. The Family Court stated on the record that its calculation of $1,506.00 pursuant to the Guidelines was based on $11,500 per month for Wife's actual income and $6,000 per month for imputed income to Husband, as well as the "child care and medical care," which appears to reflect Wife's child care expense of $862.00 and Wife's health

19

insurance cost for the Children of $270.00.[10] However, Wife plainly stated in her response and during the hearing that her costs for health insurance would be effective as of January 2019, and that her health insurance costs for the remainder of 2018 would be $100 per month. However, the Family Court ordered that the modified amount of child support would commence on August 1, 2018.

Thus, the Family Court improperly calculated Husband's modified monthly child support obligation. The case must therefore be remanded for the Family Court to accurately calculate Husband's "presumptive[]" child support obligation per the Guidelines for 2018. Only then can the Family Court properly assess whether a deviation from that amount is warranted. See P.O., 139 Hawai'i at 444, 393 P.3d at 996.

Husband argues that the application of the Hawai'i Guidelines while the Children are residing in Arizona would result in a "fundamentally unjust" child support obligation in excess of the Children's reasonable needs. We note that Husband raised this argument in DL II. Although this court did not expressly address the issue, we concluded that the Family Court did not abuse its discretion in using the CSGW to calculate Husband's child support obligation, notwithstanding his assertion that it failed to account for the different cost of living. DL

---

[10] Husband notes that the Family Court utilized $274 instead of $270 as the figure for the health insurance. While we do not have the CSGW prepared by the Family Court, the court minutes appear to support this assertion. However, as neither figure was correct for any part of 2018, we need not address the effect of this error on the child support award and, on remand, the Family Court is instructed to utilize Wife's actual costs for 2018.

II, 2019 WL 4934660, at *9. Moreover, although Husband cites a ratio for the cost of living differential, Husband failed to present any evidence that his monthly child support obligation would, in fact, exceed the Children's reasonable needs while living in Arizona. See, e.g., Guidelines at 14 ("When the amount of child support as calculated by the worksheets for the subject children exceeds the reasonable needs of the children based on the children's appropriate standard of living, there may be an exceptional circumstance. The appropriate standard of living for the children must take into account the current financial situation of both parents.") (footnotes omitted). We conclude that the Family Court did not err in rejecting Husband's argument that he established facts constituting exceptional circumstances warranting deviation from the Guidelines.

C.    Imputing Income to Wife

Husband contends that the Family Court erred in failing to impute Wife with "appropriate income" and that the Family Court abused its discretion by "ignoring the undisputed facts provided by the parties, and instead using incorrect amounts." Although Husband cites Wife's income as a paralegal after she relocated to Arizona in January 2018, Husband does not cite the period during which additional income should have been imputed to Wife, the amount of income that the Family Court ought to have imputed to Wife, or any evidence in the record to support a proposed amount. Accordingly, Husband makes no discernable argument on appeal that the Family Court erred in using Wife's actual income during 2018 to calculate the support amount, and

NOT FOR PUBLICATION IN WEST'S HAWAI'I REPORTS AND PACIFIC REPORTER

his point of error in this regard is rejected. To the extent Husband argues that the Family Court relied on incorrect information to calculate the support amounts, this issue is addressed above and the Family Court is instructed to properly apply the Guidelines on remand and utilize correct data for its calculations.

D. <u>Attorney's Fees</u>

Husband contends that the Family Court erred in denying his request for attorney's fees for bringing the Motion to Determine & Modify Child Support. Husband points to Wife's letter to the CSEA, dated August 11, 2018, in which she disclosed that her income had changed and requested guidance from CSEA on next steps. Husband asserts that Wife was told by the CSEA to allow Husband to pursue a modification but that she failed to communicate those instructions to Husband and that he did not learn until mid-September 2018 that no modification was being processed. Husband argues that "[t]here is no reason to not order [Wife] to pay for the time incurred when she *knew* she had the option to proceed at little or no cost via the CSEA but declined to do so. [Husband] should not be penalized for taking the laboring oar."

Pursuant to HRS § 580-47(f) (2018):

(f) . . . The court hearing any motion for orders either revising an order for the custody, support, maintenance, and education of the children of the parties . . . , may make such orders requiring either party to pay or contribute to the payment of attorney's fees, costs, and expenses of the other party relating to such motion and hearing as shall appear just and equitable after consideration of the respective merits of the parties, the relative abilities of the parties, the economic condition of each party at the time of the hearing, the burdens imposed upon either party for the benefit of the children of the parties, the

> concealment of or failure to disclose income or an
> asset, . . . and all other circumstances of the case.

"This statute states that the family court 'may' award fees and costs. . . . '[T]he family court is given broad discretion to award attorney fees and costs." Dring v. Dring, 87 Hawai'i 369, 378, 956 P.2d 1301, 1310 (App. 1998) (quoting Doe v. Roe, 85 Hawai'i 151, 164, 938 P.2d 1170, 1183 (App. 1997)).

Here, the Family Court was required to consider, *inter alia*, the respective merits of the parties. HRS § 580-47(f). However, because we have concluded that the Family Court's assessment of the merits of the parties with respect to Husband's Motion to Determine & Modify Child Support was significantly flawed, we cannot conclude that the Family Court's denial of attorney's fees to Husband did not constitute an abuse of discretion. A proper determination of the parties' child support obligations may impact the Family Court's consideration of the other factors listed in HRS § 580-47(f). Accordingly, we vacate the Family Court's Order Re Child Support with respect to Husband's request for attorney's fees.

V. CONCLUSION

Based on the foregoing, the Family Court's December 6, 2018 Order re Child Support is vacated, and this case is remanded for further proceedings consistent with this Memorandum Opinion.

23

DATED: Honolulu, Hawai'i, February 24, 2020.

On the briefs:

Philip J. Leas,
(Cades Schutte LLP),
for Plaintiff-Appellant.

CL,
Pro Se Defendant-Appellee.

Presiding Judge

Associate Judge

Associate Judge

NO. CAAP-19-0000023, DL v. CL, *Memorandum Opinion*